1  LEE M. GORDON (SBN 174168)
   ELAINE T. BYSZEWSKI (SBN 222304)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   700 South Flower Street, Suite 2940
3  Los Angeles, CA 90017-4101
   Telephone: (213) 330-7150
4  Facsimile: (213) 330-7152
   Elaine@hbsslaw.com
5        -and-
   STEVE W. BERMAN (WSBA No. 12536)
6  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
7  Seattle, WA 98101
   Telephone: (206) 623-7292
8  Facsimile: (206) 623-0594
   Steve@hbsslaw.com
9

10 Attorneys for Plaintiff

11 [Additional Counsel Listed on Signature Page]

12              UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15 NATIONAL HEALTH INSURANCE          Case No.
   COMPANY, on behalf of itself and all others
16 similarly situated,                C 05   04073  MHP

17                      Plaintiff,    CLASS ACTION COMPLAINT

18       v.                           DEMAND FOR JURY TRIAL

19 PFIZER INC.,

20                      Defendant.

21

22

23

24

25

26

27

28

                            - 1 -

                   CLASS ACTION COMPLAINT

LEE M. GORDON (SBN 174168)
ELAINE T. BYSZEWSKI (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA 90017-4101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Elaine@hbsslaw.com
    -and-
STEVE W. BERMAN (WSBA No. 12536)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Steve@hbsslaw.com

Attorneys for Plaintiff

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL HEALTH INSURANCE COMPANY, on behalf of itself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PFIZER INC., | |
| Defendant. | |

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

Plaintiff National Health Insurance Company ("Plaintiff"), by and through counsel, alleges on behalf of itself and on behalf of a class of similarly situated entities or other persons (the "Class"), and for its causes of action alleged against Pfizer, Inc., all on information and belief, except those allegations which pertain to Plaintiff alone, which are alleged on personal knowledge, as follows:

### I.

### NATURE OF THE ACTION

1.      Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class consisting of all health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors, health benefit providers, or any other persons, excluding governmental entities, which paid for or provided or will pay for or provide health benefits to plan insureds or plan members, as a result of one or more of their members or insureds being prescribed and supplied with, and having taken and ingested the drugs Bextra® ("Bextra") and/or Celebrex® ("Celebrex").

2.      This is a class action for damages brought by Plaintiff on behalf of a class of third-party payors that have paid and provided, and will continue to pay for or provide, health care benefits to their members and insureds as a direct and proximate result of their members and insureds having been prescribed, supplied with, and taken the prescription drugs Bextra and/or Celebrex, as researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendant. This action seeks, among other relief, general and special damages and equitable relief, including but not limited to recovery for prescription costs, diagnostic treatment, restitution, refunds, and/or for equitable, injunctive and declaratory relief against Pfizer, Inc. (hereinafter "Pfizer", "the Company" or "Defendant"), which tested, marketed, distributed, promoted and sold Bextra and Celebrex.

///

## II.

## PARTIES AND INTRODUCTORY FACTS

3.      The representative Plaintiff is a life and health insurance company with its principal place of business at 1901 North State Highway 360, Grand Prairie, Texas, 75050, and is involved in the business of providing health benefits, among others, to covered lives.  Plaintiff paid for prescriptions of Bextra and Celebrex dispensed to covered lives in several states.  Plaintiff has paid and provided, and will in the future pay and provide, health care benefits to its members and insureds as a direct result of the wrongful conduct of Defendant as fully alleged herein.

4.      Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York. Pfizer is principally engaged in the manufacture and sale of pharmaceuticals and is the largest pharmaceutical company in the United States.  In 2003, Pfizer acquired Pharmacia Corporation, a Delaware corporation with its principle place of business in New Jersey, for $60 billion primarily to acquire all rights to Bextra and Celebrex.  At all times relevant hereto, Pfizer was engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third-parties or related entities, the pharmaceutical prescription drugs Bextra and Celebrex (sometimes referred to herein collectively as the "Products").  Plaintiff alleges on information and belief that Pfizer does business in California and this federal district and at all times relevant hereto it developed, manufactured, and sold in interstate commerce and in California and this federal district, the Products.

## III.

## JURISDICTION

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and because there is complete diversity of citizenship between Plaintiff and Defendant.  Defendant is amenable to service of process in California, and Defendant is doing business in California, has committed a tort in whole or in part in California, and/or has continuing minimum contacts with the State of Califoria.  The injuries of Plaintiff and the class were caused by the wrongful acts, omissions, and fraudulent misrepresentations of

CLASS ACTION COMPLAINT

1    Defendant, which occurred, in whole or in part, within the State of California or were directed, in

2    whole or in part, toward or in the State of California.

### IV.

### INTRADISRICT ASSIGNMENT

6.    A substantial part of the acts or omissions giving rise to the claims in this action

occurred in this Judicial District, and Defendant may be found within this Judicial District.  Venue

is proper in that a substantial part of the events or omissions at issue in this case occurred in the

United States, throughout California, and within the geographical boundaries of this federal

district.  Intradistrict assignment to the San Francisco Division is proper because a substantial part

of the events or omissions at issue in this case occurred, in part, within the San Francisco Division.

7.    Plaintiff has filed this complaint within one year since it discovered, or reasonably

should have discovered by the use of reasonable care, any negligent, wrongful and/or culpable

conduct and injury to Plaintiff; and applicable tolling provisions apply.

### V.

### FACTUAL BACKGROUND

8.    This case involves two prescription drugs, valdecoxib and celecoxib, that are in a

class of pain medications called non-steroidal anti-inflammatory drugs ("NSAIDs"), that also

includes aspirin and ibuprofen.

9.    Valdecoxib and celecoxib were designed, formulated, patented, marketed, sold, and

ultimately distributed by Defendant under the brand names "Bextra" and "Celebrex", respectively.

10.    Prostaglandins are chemicals that are important in promoting inflammation and its

symptoms (pain, fever, swelling and tenderness). Prostaglandins are synthesized from arachidonic

acid by two enzymes:  prostaglandin endoperoxide H synthase-1 and synthase-2 (PGHS-1 and

PGHS-2) also known as cyclooxygenase-1 and  cyclooxygenase-2, respectively, due to their

oxygenase activity ("COX-1" and "COX-2," respectively).

11.    COX-1 is found in various tissues, including sites of inflammation and the stomach,

and is responsible for synthesizing prostaglandins critical for maintaining intact the protective

mucus lining of the stomach, but Cox-1 does not seem to play an important role in pain and

- 4 -

1    inflammation. When COX-1 is blocked the protective mucus lining of the stomach is also reduced,

2    which can lead to stomach upset, ulcers, or bleeding from the stomach and intestines.

3        12.    COX-2 is inducible, and is specifically expressed at sites in the body that are

4    responsible for inflammation, but not in the stomach. COX-2 plays a significant role in the

5    development of various symptoms and conditions, including fever, inflammation and pain. When

6    the COX-2 enzyme is blocked, inflammation is reduced with less effect on the mucus lining of the

7    stomach.

8        13.    NSAIDs inhibit both COX-1 and COX-2 enzymes, and therefore have the desired

9    effect of treating pain and inflammation, but also may damage the stomach lining and lead to

10   stomach upset, ulcers, or bleeding from the stomach and intestines.

11       14.    Bextra and Celebrex are in a new class of NSAIDs, called COX-2 inhibitors, that

12   selectively block only COX-2 but do not block COX-1, thereby reducing inflammation and its

13   symptoms with supposedly less gastrointestinal side effects.

14       15.    On December 31, 1998, Celebrex was the first COX-2 inhibitor approved by the

15   U.S. Food and Drug Administration for the treatment and management of symptoms of

16   osteoarthytis and rheumatoid arthritis in adults. On December 23, 1999, Celebrex was further

17   approved by the U.S. Food and Drug Administration for the treatment and management of

18   symptoms of familial adenomatous polyposis. However, the FDA did not approve Celebrex as

19   more effective than NSAIDs in preventing clinically serious gastrointestinal events. In fact, the

20   FDA, after reviewing the results of Defendant's own study, the Celecoxib Long-Term Arthritis

21   Safety Study ("CLASS"), concluded that Celebrex was not superior to other NSAIDs in preventing

22   clinically serious gastrointestinal events.

23       16.    The CLASS study was prematurely halted because the relative risk for a major

24   cardiologic adverse event that increased from 2.4 to 3.4 times in participants taking Celebrex.

25   Incredibly, Defendant arranged to have the only partial data from the CLASS study published,

26   thereby fraudulently spreading misinformation about the safety and efficacy of Celebrex. The

27   FDA stated that Defendant's decision to publish only partial data from the CLASS study was not

28   statistically valid or supportable.

- 5 -

1    17.    In February, 2001, the FDA sent a warning letter to Defendant due to marketing

2    activities and materials for Celebrex that violated the Federal Food, Drug, and Cosmetic Act

3    because they minimized the contraindications and risks associated with Celebrex use and contained

4    unsubstantiated comparative claims of superiority with regard to other NSAIDs.

5    18.    On November 16, 2001, Bextra was approved by the U.S. Food and Drug

6    Administration for the treatment and management of symptoms of osteoarthytis and rheumatoid

7    arthritis in adults and dysmenorhea (painful menstrual cycles).

8    19.    In November 2004, a Bextra cardiovascular study found that participants taking

9    Bextra were more than three times likely to suffer a heart attack, blood clot, stroke, or other

10   adverse cardiovascular or thromboembolic event than participants in the control group. After the

11   release of these results, consumer groups and scientific experts started to urge Defendant to recall

12   Bextra. However, Defendant continually maintained that Bextra was safe and that these results did

13   not warrant a recall.

14   20.    Bextra use was also associated with an increased risk of Stevens Johnson syndrome,

15   a serious and potentially fatal skin condition, which claimed the lives of several Bextra users.

16   21.    In response to the risks associated with Bextra use, the FDA requested stronger

17   warnings be added to Bextra labeling.  However, Defendant declined to cooperate with this FDA

18   request for more than two years.

19   22.    On April 7, 2005 the FDA finally ordered Pfizer to issue a Bextra recall after

20   regulators concluded that the potentially fatal risks associated with Bextra far outweighed its

21   intended benefits.

22   23.    Defendant's marketing and promotion of Bextra and Celebrex, designed to vastly

23   increase demand for these Products, was performed by unlawful means including, but not limited

24   to:

25   A)    Suppressing data that showed increased risk of adverse cardiovascular

26         events associated with the use of these Products;

27   / / /

28   / / /

- 6 -

1    B)       Manipulating data to show statistically significant fewer serious upper
2             gastrointestinal adverse events in patients taking the Products, when in fact
3             the opposite was true;

4    C)       Manipulating data to show superior efficacy of the Products over other
5             NSAIDs when this was not the case; and

6    D)       Creating and distributing patently false promotional materials to physicians
7             and consumers.

8    24.    From 1999 through 2003, Defendant spent approximately $400 million on direct to
9    consumer advertising for Celebrex.

10   25.    In 2004, worldwide sales of Celebrex were more than $3.3 billion, and sales of
11   Bextra were nearly $1.3 billion, accounting for almost nine percent of Pfizer's total revenues of
12   $52.5 billion.

13   26.    Defendant aggressively marketed and sold both Bextra and Celebrex by misleading
14   potential users about the Products and by failing to adequately warn users of serious dangers which
15   Defendant knew or should have known resulted from the use of Bextra and/or Celebrex.
16   Defendant widely and successfully marketed Bextra and Celebrex throughout the United States in
17   order to induce widespread use of these Products.   These marketing campaigns resulted in
18   numerous individuals taking Bextra and/or Celebrex and suffering serious injuries as a result, all at
19   a time when other safer, efficacious drugs were available.  Had individuals known the risks and
20   dangers associated with Bextra and/or Celebrex, and had Defendant disclosed such information,
21   Plaintiff's insureds would not have taken Bextra or Celebrex nor been subject to its catastrophic
22   side effects and Plaintiff would not have suffered the payment for the prescriptions or the payment
23   of medical expenses related thereto.  On information and belief, as a result of the manufacturing,
24   marketing, selling and distributing of Bextra and Celebrex, Defendant has reaped billions of dollars
25   in profits at the expense of the health of individuals such as Plaintiff's members and Plaintiff.

26   / / /
27   / / /
28   / / /

- 7 -

**VI.**

**CLASS ACTION ALLEGATIONS**

27.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and as a representative of the Class consisting of:

> All health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, federal employee health plans, third-party payors, health benefit providers, and any entities or other persons, excluding governmental entities, which paid for or provided, or will pay for or provide, health benefits to themselves or plan insureds or plan members, as a result of themselves, or one or more of their members or insureds, being prescribed and supplied with, and having taken and ingested the drugs Bextra and/or Celebrex.

28.     Plaintiff and the Class bring this action for equitable, injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

29.     Plaintiff and the Class seek a refund or reimbursement of all amounts they have paid to or on behalf of themselves or their members for the purchase of Bextra and Celebrex; all amounts paid or which will be paid to or on behalf of themselves or their members in the form of medical expenses and prescription costs incurred as a proximate result of their members ingesting Bextra and/or Celebrex; and, all other ascertainable economic losses and such other relief as Plaintiff and the Class are entitled to, including treble damages, and reasonable attorneys fees and costs.

30.     Plaintiff is a member of the class it seeks to represent.  The Class is believed to number in the thousands.  As a result, joinder of all Class members in a single action is impracticable.

31.     There are questions of law and fact common to the members of the Class, including but not limited to:

          A)     whether Bextra was and is toxic and/or unsafe;

          B)     whether Celebrex was and is toxic and/or unsafe;

/ / /

/ / /

/ / /

- 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C)   whether persons who took Bextra and/or Celebrex are at increased risk of developing serious heart damage, heart attacks, strokes, blood clots, and/or other cardiovascular diseases and/or other thrombotic problems, and/or Stevens Johnson syndrome;

D)   whether there exist monitoring and testing procedures that make early detection and treatment of the serious heart damage caused by exposure to Bextra and/or Celebrex possible and beneficial;

E)   whether medical monitoring is appropriate;

F)   whether, in marketing and selling Bextra, Defendant failed to disclose the dangers and risks to the health of persons ingesting the drug;

G)   whether, in marketing and selling Celebrex, Defendant failed to disclose the dangers and risks to the health of persons ingesting the drug;

H)   whether Defendant failed to warn adequately of the adverse effects of Bextra and/or Celebrex;

I)   whether Defendant falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety, potential side effects and convenience of Bextra and/or Celebrex;

J)   whether Defendant designed and manufactured drugs that were unreasonably dangerous because their use leads to serious adverse health effects including, but not limited to, serious heart damage, heart attacks, blood clots, strokes, Stevens Johnson syndrome and/or other cardiovascular or thrombotic problems;

K)   whether Defendant knew or should have known that the ingestion of Bextra and/or Celebrex leads to serious adverse health effects;

L)   whether Defendant adequately tested Bextra and Celebrex prior to selling them;

///

- 9 -

1
2
3

    M)    whether Defendant continued to manufacture, market, distribute, and sell Bextra and/or Celebrex notwithstanding its knowledge of these drugs' dangerous nature;

4
5
6

    N)    whether the warnings and information Defendant provided with respect to Bextra and/or Celebrex were adequate warnings of the potential hazards resulting from their ingestion; and

7
8
9
10

    O)    whether Defendant knowingly omitted, suppressed and/or concealed material facts about the unsafe and defective nature of Bextra and/or Celebrex from government regulators, the medical community and/or the consuming public.

11
12

32.    These and other questions of law and/or fact are common to the Class and predominate over any question affecting only individual class members.

13
14
15
16
17

33.    The claims of the class representative are typical of the claims of the Class in that the named class representative and the members of the Class each paid for the prescription drugs Bextra and Celebrex or reimbursed members for the cost of Bextra and Celebrex prescriptions and also paid and will pay for the medical and diagnostic treatment and care of Bextra and Celebrex victims due to the improper actions of Defendant, as described herein.

18
19

34.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

20
21
22
23
24

35.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions and products liability litigation to represent Plaintiff and the members of the proposed Class. Accordingly, the interests of the Class will be adequately protected and advanced. In addition, there is no conflict of interest between the representatives of the proposed Class and members of the Class.

25
26
27
28

36.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in

1    inconsistent adjudications, while a single class action can determine, with judicial economy, the

2    rights of all Class members.

3    37.    Notice can be provided to Cass members by using techniques and forms of notice

4    similar to those customarily used in other drug-related products liability cases and complex class

5    actions.

6    38.    Certification of the Class is appropriate pursuant to Federal Rules of Civil Procedure

7    23(a) and 23(b)(3) because the questions of law and fact common to members of the Class

8    predominate over any questions affecting only individual members.  This class action is superior to

9    other available remedies for the fair and efficient adjudication of this controversy.

10                                                      **VII.**

11                                     **FIRST CAUSES OF ACTION**

12                       **VIOLATION OF CONSUMER PROTECTION STATUTE**

13    39.    Plaintiff incorporates the allegations of the foregoing paragraphs by reference.

14    40.    Consumer fraud statutes in California and in other states prohibit the act, use, or

15    employment of any fraud, false pretense, false promise, misrepresentation, misleading statement or

16    deceptive practice in connection with the sale of any merchandise.  Consumer fraud statutes in

17    California and in other states also prohibit conduct which creates a likelihood of confusion or of

18    misunderstanding.

19    41.    Defendant has engaged in acts and practices, as described in this complaint, which

20    were and are likely to mislead the general public in violation of these consumer protection statutes.

21    Defendant has advertised, marketed and sold the Products through the use of misleading,

22    incomplete and deceptive advertising, promotion and product information, in violation of the

23    consumer protection statutes of this state and all other states.

24    42.    At all times herein, Defendant has violated the consumer fraud laws and the false

25    advertising act by disseminating untrue and misleading statements and engaging in conduct likely

26    to deceive consumers, by engaging in acts and practices with intent to induce members of the

27    public to purchase and use the drugs Bextra and/or Celebrex.

28    / / /

CLASS ACTION COMPLAINT

1    43.    This conduct includes, but is not limited to, representing to Plaintiff and Plaintiff's

2    members and their agent's and physicians, and to the general public that the Products were safe, fit

3    and effective for human consumption, knowing that said representations were false, and concealing

4    from Plaintiff and Plaintiff's members and their agent's and physicians, and to the general public

5    that the Products had a serious propensity to cause injuries to users, and purposely downplaying

6    and understating the health hazards and risks associated with these drugs.

7    44.    The foregoing practices constitute false and misleading advertising, unlawful trade

8    practices, and deceptive trade practices within the meaning of the consumer protection statutes in

9    California and other states.

10    45.    The unlawful, unfair and fraudulent business practices of Defendant described

11    above present a continuing threat to members of the public in that Defendant continues to engage

12    in the conduct described therein.

13    46.    Plaintiff is subrogated to the consumer causes of action held by its members.

14    47.    As a result of its conduct described above, Defendant has been and will be unjustly

15    enriched. Specifically, Defendant has been unjustly enriched by receipt of billions of dollars from

16    the sale and prescription of the Products, sold in large part as a result of the acts and omissions

17    described herein.

18    48.    Because of the fraudulent misrepresentations made by Defendant as detailed above,

19    and the inherently unfair practice of committing a fraud against the public by misleading and

20    concealing material information, the acts of Defendant described herein constitute unfair or

21    fraudulent business practices.

22    49.    Plaintiff seeks an order of this court compelling Defendant to provide restitution,

23    and to disgorge the monies collected and profits realized by Defendant as a result of its unfair

24    business practices, and injunctive relief calling for Defendant to cease such unfair business

25    practices in the future.

26    / / /

27    / / /

28    / / /

- 12 -

# VIII.

## SECOND CAUSE OF ACTION

## SUBROGATION

50.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

51.     Plaintiff and the Class bring the following causes of action under theories of contractual and/or equitable subrogation.

52.     Throughout the relevant period, Plaintiff provided a full spectrum of health benefit products, including but not limited to managed care products, third-party administration services, and indemnity products, to both groups and individuals, on both an insured and an employer funded basis. Each of these products were provided to members who have been injured by Defendant's drugs, Bextra and/or Celebrex.

53.     The damages sustained by Plaintiff and the Class include but are not limited to damages for all benefits paid or provided to plan members or insureds, said damages being incurred as a result of the plan member or insured being injured by or seeking treatment, including diagnostic care, as a proximate result of the use of the drugs Bextra and/or Celebrex.

54.     Plaintiff provided these and other benefits to its insureds and plan members not as a volunteer, but, pursuant to its obligations under the contractual agreements specifying the respective rights and obligations of Plaintiff and its members and/or insureds.  These agreements specifically granted Plaintiff broad subrogation and reimbursement rights.

55.     Class members provided benefits to their plan members and insureds either under contractual provisions  granting each of them subrogation and reimbursement rights or are subject to equitable subrogation under the substantive law of the jurisdictions in which they are located and in which Defendant sold its Products.

56.     Plaintiff and the Class have contractual and equitable rights of subrogation and reimbursement against Defendant herein to recover damages to the extent of health benefits paid or provided on behalf of Bextra and/or Celebrex victims related to the wrongful conduct of Defendant as alleged herein.

57.     As a result of their subrogation and reimbursement rights, Plaintiff and the Class are entitled to recover damages, as alleged, on the following counts.

## IX.

### THIRD CAUSE OF ACTION

### STRICT LIABILITY AND FAILURE TO WARN

58.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59.     The drugs Bextra and Celebrex are both unreasonably dangerous products as defined by various state Products Liability Acts (such as Louisiana Revised Statute 9:2800.1 *et seq.*), and Defendant is liable for all injuries proximately caused thereby.

60.     The drugs Bextra and Celebrex were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, in that, and not by way of limitation, the Products and their warnings, instructions and directions failed to warn of the dangerous propensities of Bextra and/or Celebrex, which risks were known or reasonably scientifically knowable to Defendant.  Defendant knew or should have known of the defective condition, characteristics and risks associated with Bextra and Celebrex, as previously set forth herein.

61.     At all times herein mentioned, the Products were defective, and Defendant knew that the Products were to be ingested by the user without inspection for defects therein.  Moreover, Plaintiff and Plaintiff's members neither knew, nor had reason to know at the time of the use of the Products, of the existence of the aforementioned defects.

62.     As a result of the defective condition of the Products, Plaintiff and the Class members are entitled to the damages as they are alleged herein.

/ / /

/ / /

/ / /

/ / /

- 14 -

**X.**

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**

63.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64.     The drugs Bextra and Celebrex are unreasonably dangerous products and Defendant is liable for all injuries proximately caused thereby.

65.     Prior to the time that the Products were used by Plaintiff's members, Defendant impliedly warranted to Plaintiff and Plaintiff's members and their agents and physicians that the Products were of merchantable quality and safe and fit for the use to which they were intended.

66.     Plaintiff is unskilled in the research, design and manufacture of the Products and reasonably relied entirely on the skill, judgment and implied warranty of Defendant in using the Products.

67.     The Products were neither safe for their intended use nor merchantable quality, as warranted by Defendant, in that they had dangerous propensities when put to its intended use and would cause severe injuries to the user.

68.     As a result of the aforementioned breach of implied warranties by Defendant, Plaintiff has suffered damages as alleged herein.

**XI.**

**FIFTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

69.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70.     The drugs Bextra and Celebrex are unreasonably dangerous products and Defendant is liable for all injuries proximately caused thereby.

71.     At all times herein mentioned, Defendant expressly warranted to Plaintiff and Plaintiff's members and their agents and physicians, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and

- 15 -

1  other written materials intended for physicians, medical patients and the general public, that the

2  Products were safe, effective, fit and proper for their intended use.

3  72.  In utilizing the Products, Plaintiff and Plaintiff's members relied on the skill,

4  judgment, representations and foregoing express warranties of Defendant. Said warranties and

5  representations were false in that the Products were not safe and were unfit for the use for which

6  they were intended.

7  73.  As a result of the foregoing breach of express warranties by Defendant, Plaintiff

8  suffered damages as alleged herein.

9  ## XII.

10  ## SIXTH CAUSE OF ACTION

11  ## NEGLIGENCE

12  74.  Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as

13  if fully set forth herein.

14  75.  At all times herein mentioned, Defendant had a duty to properly manufacture,

15  design, formulate, compound, test, produce, process, assemble, inspect, research, distribute,

16  market, label, package, prepare for use, sell, prescribe and adequately warn of the risks and dangers

17  of the Products.

18  76.  At all times herein mentioned, Defendant negligently and carelessly manufactured,

19  designed, formulated, compounded, produced, processed, assembled, inspected, distributed,

20  marketed, labeled, packaged, prepared for use and sold the Products and failed to adequately test

21  and warn of the risk and dangers of the Products.

22  77.  Defendant impliedly and/or expressly represented that the drugs Bextra and

23  Celebrex, which it manufactured, distributed and/or sold were safe for use and would not cause the

24  adverse health effects described herein.

25  78.  As a result of said negligence and carelessness of Defendant, Plaintiff has suffered

26  damages as alleged herein.

27  ///

28  ///

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# XIII.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE *PER SE*

79.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

80.    At all times herein mentioned, Defendant had an obligation not to violate the law, in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of the Products.

81.    At all times herein mentioned, Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 201, *et seq.*, related amendments and codes and regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

82.    Plaintiff and Plaintiff's members, as purchasers and consumers of the Products, are within the class of persons the statutes and regulations described above are designed to protect, and Plaintiff and Plaintiff's member's injuries are the type of harm these statutes are designed to prevent.

83.    The acts of Defendant as alleged herein constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §331, and constitute a breach of duty subjecting Defendant to civil liability for all damages arising there from, under theories of negligence *per se.*

84.    Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of persons such as Plaintiff and Plaintiff's members, making Defendant negligent *per se*: (a) the Labeling lacked adequate information on the use of the drugs Bextra and/or Celebrex [21 C.F.R. Section 201.56(a) and (d)]; (b) the labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation: deadly, irregular heart beats; heart attacks; ventricular fibrillation; heart diseases; blood clots; strokes; Stevens Johnson syndrome; and other adverse medical conditions as soon as there

- 17 -

1    was reasonable evidence of their association with the drug [21 C.F.R. 201.57(e)]; (c) there was

2    inadequate information for patients for the safe and effective use of the Products [C.F.R.

3    201.57(f)(2)]; (d) there was inadequate information regarding special care to be exercised by a

4    doctor for safe and effective use of the Products [21 C.F.R. 201.57(f)(1)]; and (e) the labeling of

5    Bextra and/or Celebrex was misleading, promotional, and self-serving [21 C.F.R. 201.56(b)].

6          85.    Defendant's acts constitute an adulteration and/or were misleading.

7          86.    As a result of the violations of the statutes described above, Plaintiff has suffered

8    damages as alleged herein.

9                                          XIV.

10                              EIGHTH CAUSE OF ACTION

11                          COUNT VIII: UNJUST ENRICHMENT

12         87.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as

13   if fully set forth herein.

14         88.    As a result of its conduct described above, Defendant has been and will be unjustly

15   enriched.  Specifically, Defendant has been unjustly enriched by the receipt of billions of dollars

16   from the sale and prescription of the Products, sold in large part as a result of the acts and

17   omissions described herein.

18         89.    Because of the fraudulent misrepresentation made by Defendant as detailed above,

19   and the inherently unfair practice of committing a fraud against the public by misleading and

20   concealing material information, the acts of Defendant described herein constitute unfair or

21   fraudulent business practices.

22         90.    Plaintiff seeks an order of this court compelling Defendant to provide restitution,

23   and to disgorge the monies collected and profits realized by Defendant as a result of its unfair

24   business practices, and injunctive relief calling for Defendant to cease such unfair business

25   practices in the future.

26         91.    Plaintiff is subrogated to the consumer causes of action held by its members.

27   / / /

28   / / /

CLASS ACTION COMPLAINT

## XV.

## NINTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

92.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff and the Class have contracts with their insureds, applicable to all covered lives, that provide for rights of subrogation and reimbursement of their expenditures where a third-party to the contract is responsible for the costs.

94.     Defendant may settle personal injury claims brought by some of the plaintiffs injured due to their consumption of the Products.  However, absent the requested injunction, Plaintiff and the Class will not be aware of when there is money available to them to be reimbursed by their insureds.  Accordingly, an injunction should be directed against Defendant and against all consumers before this court, including their counsel, to provide notice to Plaintiff and the Class of any settlement involving an insured plaintiff.  Plaintiff or the Class will then undertake notification of the individual Class members.

### PRAYER FOR RELIEF:

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A.     For an order certifying this matter as a class action as requested herein;

B.     For an order appointing the Plaintiff as Class Representative, and their counsel of record as Class Counsel;

C.     For an order awarding Plaintiff and members of the Class past and future general damages, including the restitution and/or disgorgement of all unlawful and illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

D.     For an order awarding Plaintiff and members of the Class past and future medical and incidental expenses;

E.     For an order awarding Plaintiff and members of the Class punitive and exemplary damages in an amount to be determined at trial;

/ / /

- 19 -

F.      For an order awarding Plaintiff and members of the Class all prejudgment interest on all damages as is allowed by law;

G.      For an order awarding Plaintiff and members of the Class all past and future costs of suit incurred herein, including attorney fees;

H.      For an order granting Plaintiff and members of the Class an injunction directed against Defendant and their counsel before this court to give notice to Plaintiff and the Class of any settlement;

I.      For an order granting Plaintiff and members of the Class an injunction, enjoining Defendant from the acts of unfair competition and untrue and misleading advertising alleged above, and ordering Defendant to restore to all Class members all funds acquired by means of any act or practice declared by this court to be unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising; and,

J.      For all other and further relief as the court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 10 , 2005

                   HAGENS BERMAN SOBOL SHAPIRO LLP

                   By_____
                      LEE M. GRODON
                      ELAINE T. BYSZEWSKI
                      700 South Flower Street, Suite 2940
                      Los Angeles, CA 90017
                      Telephone:    (213) 330-7150
                      Facsimile:    (213) 330-7152

                      STEVE W. BERMAN
                      HAGENS BERMAN SOBOL SHAPIRO LLP
                      1301 Fifth Avenue, Suite 2900
                      Seattle, WA 98101
                      Telephone: (206) 623-7292

1   THOMAS M. SOBOL
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   One Main Street, 4th Floor
    Cambridge, MA  02142
3   Telephone:  (617) 482-3700

4   JAMES R. DUGAN, II
    DAVID L. BROWNE
5   DOUGLAS R. PLYMALE
    DUGAN & BROWNE, APLC
6   650 Poydras Street,  Suite 2150
    New Orleans, Louisiana 70130
7   Telephone:    (504) 648-0180
    Facsimile:    (504) 648-0181
8
    CHRISTOPHER A. NEAL
9   CHRISTOPHER A. NEAL & ASSOCIATES, P.C.
    300 Harwood
10  Bedford, Texas  76021
    Telephone:    (817) 545-6100
11  Facsimile:    (817) 589-2530

12  LEWIS KAHN
    KAHN GUATHIER LAW GROUP, L.L.C.
13  650 Poydras Street,  Suite 2150
    New Orleans, Louisiana 70130
14  Telephone:    (504) 455-1400
    Facsimile:    (504) 455-1498
15
    DON BARRETT
16  BARRETT LAW OFFICE
    404 Court Square North
17  P.O. Box 987
    Lexington, MS 39095
18  Telephone:    (662) 834-2376
    Facsimile:    (662) 834-2628
19
    Attorneys for Plaintiff
20

21

22

23

24

25

26

27

28

- 21 -

CLASS ACTION COMPLAINT